REBECCA HOPPER, Appellant, v. GUNDER HOWARD and the Hillsboro National Bank, a Corporation, Respondent.

(166 N. W. 511.)

**Judgment — evidence — supported by.**

Evidence examined and *held* to support the judgment.

Opinion filed December 12, 1917.  Rehearing denied February 8, 1918.

Appeal from the District Court of Traill County, Honorable *Chas. A. Pollock,* Judge.

Plaintiff appeals.

Affirmed.

*Carmody & Leslie,* for appellant.

Under a farming contract providing that the owner shall have and retain title and possession of all the crops raised thereunder and shall have the right to payment out of the share that might ultimately belong to the tenant or worker of the farm for all debts due him from such tenant, and for all advances made to such tenant, the owner of the land is the absolute owner and entitled to the possession of all of the crops grown, until the tenant has performed fully his part of the contract, and paid all his debts to the landowner, and until the tenant's share is set apart to him.  Any third person taking any of the crops from the tenant is responsible therefor to the landowner.  Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Bidgood v. Monarch Elev. Co. 9 N. D. 627, 81 Am. St. Rep. 604, 84 N. W. 561; Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563; Van Gordon v. Goldamer, 16 N. D. 323, 113 N. W. 609; Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377; Wadsworth v. Owens, 17 N. D. 173, 115 N. W. 667; Simmons v. McConville, 19 N. D. 787, 125 N. W. 304; Consolidated Land & Irrig. Co. v. Hawley, 7 S. D. 229, 63 N. W. 904; Wentworth v. Miller, 53 Cal. 9; Moulton v. Robinson, 27 N. H. 550; Edson v. Colburn, 28 Vt. 631, 67 Am. Dec. 730.

Such contracts cover hay or any other produce of the farm.  Hawk v. Konouzki, 10 N. D. 37, 84 N. W. 563.

*Theo. Kaldor,* for respondents.

In construing a farming contract containing both printed and written matter, the matters written in with pen and ink, where there is any conflict or ambiguity, shall control. In a contract containing a written clause to the effect that upon final settlement "wheat, barley, oats, or winter rye" shall be divided, such contract does not include timothy seed grown for which the tenant himself furnished the seed to plant, and a mortgage given thereon by the tenant is superior to the contract, nor does it include crops grown from meadow land, and a mortgage on such crops is superior to the contract. A renter has an interest in crops grown under such contracts, which he may mortgage to others. Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, L.R.A.1917E, 298, 162 N. W. 543.

ROBINSON, J. The plaintiff brings this action to recover 300 bushels of timothy seed. The bank claims the seed under a chattel mortgage duly made to it by W. H. Ambrosius. The court found in favor of the bank, and plaintiff appeals. The claim of plaintiff is based on a contract with Ambrosius for the farming of section 29, 144–51 during the years 1916, '17, and '18. The contract is in ordinary legible printing and typewriting, excepting a large paragraph, which is in microscopic print. The lessee agrees in a proper manner to farm the land and to furnish all necessary seed for one half of all the grains, wheat, barley, oats, or winter rye secured upon the farm during said years. He agrees to pay a cash rental of $2.50 an acre for the meadow land and $1.25 per acre for the pasture land on the 1st day of December in each year. The paragraph in small print, which was probably never read, contains numerous covenants on the part of the lessee, among which are that, until settlement and division of the crops, the title and possession of all hay, grain, crops, produce, stock increase, income, and products raised and grown and produced on said premises shall be and remain in the owner of the land, who may take and hold the crops, stock increase, income, and produce that would, on a division of the same, belong to the owner of the land. Now, on a division of the crops, no part of the timothy seed would belong to the owner of the land. The lessee agreed to pay $2.50 an acre for the meadow land, and it is manifest there was to be no division of the crops which grew on that land. And that is made more certain by the agreement in typewriting

to deliver to the landlord one half of the grains, wheat, barley, oats, and winter rye. This agreement fairly shows that there was to be an equal division of the cultivated crops, but there was to be no division of the crops grown on the meadow land, for which the lessee agreed to pay $2.50 an acre. The lessee had at all times an absolute title to the crops of hay and timothy seed, and had a right to mortgage the same. He had a right to mortgage his interest in all the other crops, regardless of any agreement that the title should be in the landlord. When a cropping contract is in microscopic print which cannot be read without straining the eyes, and when, by such means, it is turned into an oppressive chattel mortgage, it deserves no favor of the courts. A chattel mortgage should be a chattel mortgage and a lease should be a lease, and nothing more. When it obliges a tenant to do a thing it should not tie him down and deny him the means of doing it. A person who farms land on shares is not a capitalist. To farm the land he must often borrow and expend large sums of money, and pledge his share of the crops to secure the loan. Hence it is but proper to hold that a person who spends time, labor, and money in growing a crop has an interest in the crop and a right to mortgage his interest. As a rule that would be true even if he were a trespasser on the land. In this case the lessee took the meadow and pasture land for a cash rental, and became the owner of all the crops of grass, hay, and timothy thereon grown, and he had a right to mortgage all of the same. On August 28, 1916, to secure a large sum of money, he gave to the bank a mortgage on all the timothy seed in question. The seed has been turned into money and deposited in the bank, pursuant to a stipulation of counsel. The judgment of the trial court is clearly right, and it is affirmed.

BRUCE, Ch. J. (specially concurring). I concur in the above opinion, but on the sole ground that there is no proof that the bank had any notice or knowledge of the claim or lien of the plaintiff at the time the chattel mortgage was given to it by Ambrosius. I am satisfied that the contract gave to the plaintiff such a claim or lien.